J. T. and Emma Lowe v. Commissioner.
Lowe v. Commissioner
Docket No. 28053.
United States Tax Court
1952 Tax Ct. Memo LEXIS 212; 11 T.C.M. (CCH) 508; T.C.M. (RIA) 52152; May 22, 1952
*212 Edward M. Heller, Esq., for the petitioners. Joseph P. Crowe, Esq., for the respondent. TURNER Memorandum Findings of Fact and Opinion TURNER, Judge: The respondent has determined a deficiency of $151.86 in the income tax of the petitioners for 1947. Findings of Fact The petitioners are husband and wife residing in New Orleans, Louisiana. They filed their joint income tax return (long form) for 1947 with the collector of internal revenue at New Orleans. Since about 1923 J. T. Lowe has been employed by the Pullman Company as a porter. Since 1939 he has had a regular run between New Orleans and Los Angeles, California, and during 1947 was a porter on the "Sunset Limited" train operated by the Southern Pacific Railroad between those two points. In their 1947 return the petitioners reported a total gross income of $2,519.33, of which $2,419.33 was shown as the amount of J. T. Lowe's compensation from the Pullman Company and $100 was shown as the amount of tips received. From the reported gross income of $2,519.33, $1,148.58 was deducted as the total of the listed deductions, leaving $1,370.75 as net income, on which a tax of $71.14 was computed. A payment of *213 $128.70 was shown as having been made by withholding from wages and an overpayment of tax shown in the amount of $57.51, which petitioners requested be refunded to them. The items and amounts of the deductions were listed in the return as follows: Contributions
Holy Ghost Church
$100.00
Trinity M. E. Church
150.00
Red Cross and Community
Chest
10.00
March O' Dimes and Na-
tional Association for the
Advancement of Colored
People
11.00
$ 271.00
Taxes
Sales tax on food and cloth-
ing
$ 75.58
75.58
Miscellaneous
Union dues
36.00
Expense for food and lodg-
ing away from home on
job - For 171 days at $4.50
per day
770.00
806.00
Corrected total
$1,152.58
During 1947, J. T. Lowe made thirty round-trip runs between New Orleans and Los Angeles. In addition, he made a run from New Orleans to Los Angeles and was enroute on a run from Los Angeles to New Orleans as the year closed. He also made a run from New Orleans to El Paso, Texas, which with his return engaged his time from 10:30 A.M., January 6, 1947, to 7:50 A.M., January 9, 1947. In New Orleans Lowe reported for duty at 10:30 A.M., before departing on his run at 11.30 A.M., for Los *214 Angeles where he ordinarily arrived around 10:00 o'clock of the second morning afterwards. At 11:30 of the morning of the day after his arrival in Los Angeles he reported for work and an hour later, at 12:30 P.M., departed for New Orleans where he usually arrived around 4 to 4:30 o'clock of the second afternoon. On some occasions his layover in New Orleans was for four full days and five nights and on others was for five full days and six nights. In 1947 the Southern Pacific Railroad allowed pullman porters a discount of 25 per cent from the standard charge for meals on its trains. When in Los Angeles Lowe occupied a room at the Rossmore Hotel. He incurred some expense for transportation between the railroad terminal or yards and the hotel. Normally, if not exclusively, this transportation was by an automobile operated by a woman who would transport groups of pullman porters to and from the hotel on a round-trip basis. Lowe kept no records of his expenditures for meals, lodging or other allowable items while away from home in 1947. In that year he incurred such expenses in the amount of $500. During 1947 Lowe was a member of the Brotherhood of Sleeping Car Porters, to which he *215 paid dues of $36 in that year. Emma Lowe was a member of the Holy Ghost Church. She attended mass each Sunday, and usually was at the church on Tuesday evenings. In the course of the various trips to the church during 1947 she made contributions to the poor box and the regular collection and on some trips lighted candles at a cost of five cents per candle. When there were special drives for funds she made some contributions thereto. She kept no records of her contributions. Emma Lowe contributed $60 to the Holy Ghost Church in 1947. J. T. Lowe is a member of the Trinity Methodist Episcopal Church. He attended services at that church when he was in New Orleans. He also attended church at times when he was in Los Angeles. When he attended church he gave "fifty cents or a dollar or a quarter." During 1947 a drive was conducted by the church for funds for remodeling the church, to which he subscribed $100. He kept no record of his contributions to the church and the amount of such payments as he may have made on this subscription in 1947 is undisclosed. He contributed $40 to the Trinity Methodist Episcopal Church in 1947. During 1947 the petitioner J. T. Lowe contributed one dollar *216 to the American Red Cross, one dollar to the March of Dimes, and five dollars to the Community Chest. The contributions to the Red Cross and the March of Dimes were made to collections taken at the ball park, where he attended ball games when in New Orleans. The Community Chest contribution was made through solicitation at his church or at his home. Lowe also contributed six dollars in 1947 to the National Association for the Advancement of Colored People. Exclusive of state sales taxes paid while away from home in the course of his employment and which have been covered in his traveling expenses, Lowe paid $15 of such taxes in 1947. Lowe's house rent was $18 a month. He averaged $4.50 a month for gas and electricity, and $3.75 a month for telephone. He paid $2.60 a month for group insurance, 55 cents a week for other life insurance, and 65 cents a week for sickness and accident insurance. He also paid into the Railroad Retirement Fund 5 per cent of his compensation from the Pullman Company. He owned an automobile in 1947 and during that year incurred expenses for gasoline, oil, four tires and $3 for license plates. Emma Lowe's doctor bills mounted to $30 for 1947. Lowe regularly *217 attended baseball games when he was not on his runs, and occasionally attended movies. Opinion At the hearing the respondent, over the objection of the petitioners' counsel, filed an amended answer, asking for an increased deficiency. The basis of the claim for increase was that the petitioners had elected to itemize their deductions on a "long form" income tax return and that such election, when taken, was irrevocable; that the respondent had disallowed all deductions other than $100 of the deduction claimed for traveling expenses, and that petitioners, under such circumstances not being entitled under the law to have their tax computed under the "short form" method permitted "under the optional tax table for the year 1947 provided for in section 400 of the Internal Revenue Code," a computation of the deficiency by the "long form" method would result in an increase of $46.68 in the deficiency originally determined by the respondent. On brief, the respondent has abandoned the claim made in his amended answer. From the record, it rather obviously appears that respondent intended his determination of deficiency, in so far as it related to the expenses incurred *218 by J. T. Lowe while away from home in the course of his employment, to be a combination determination as to the allowable amount of such expenditures and an increase in gross income by reason of unreported tips. Respondent did not, however, increase gross income by any specified amount determined by him to be the tips unreported by Lowe. Neither did he set out the amount determined by him to be the amount of expenses actually incurred by Lowe while away from home in the course of his employment. Instead, without any specification of the amount of unreported tips or the amount overstated by Lowe as his expenses while away from home in the course of his employment, his determination was that whatever the actual amount of such expenses incurred by Lowe, they were, with the exception of $100, offset by unreported tips. The net effect of this determination was no change in gross income with respect to tips and the allowance of only $100 with respect to the expenses incurred while away from home in the course of his employment. In the explanation accompanying his determination, however, the respondent described the adjustments as the adjustment of gross income. While it does appear from *219 the testimony of Lowe himself that in reporting gross income his tips were substantially understated in that $100 for the entire year would average approximately $3 in tips per round trip, whereas petitioner himself, in explaining his method of keeping track of tips, picked $4 to illustrate the amount of tips from New Orleans to Los Angeles and $6 from Los Angeles to New Orleans, or $10 per round trip, the petitioners were justified, we think, in reading the determination to mean an adjustment only of the amount of the deduction claimed for such expenses. They did not read and understand the notice of deficiency to mean that the respondent had in his determination made any additions to gross income and the issues raised by their petition were based on that understanding. The determination was not clear but was misleading, and it is our view that the petitioners were justified in construing the determination as they did. Furthermore, the respondent in his answer joined issue on the petition as drawn. Our decision will be limited to the issues joined and will not be extended to matters which respondent may have and possibly did intend to set forth in his notice of determination, but *220 which were not clearly and definitely set forth in the explanation attached to the said notice, but to the contrary were confusing and ambiguous. As to the items in issue, the petitioners kept no records. It is definite and clear that their testimony as to most of the items was based on estimates made in retrospect. We are convinced from the record that they did have expenses and did make contributions of the nature and character shown in our findings of fact in some amounts and for which they are entitled to deductions in determining net income. As to items in respect of which the testimony appears to be exact, we have given effect to that testimony. As to other items, we have, in making our findings, applied the rule of Cohan v. Commissioner, 39 Fed. (2d) 540, bearing heavily upon the taxpayers in view of the fact that the inexactitude as to the amounts of the deductions allowable is of their own making. The amounts found and determined are all set forth in our findings of fact. As to the $6 contributed to the National Association for the Advancement of Colored People, the petitioner has not shown a right to any deduction. The respondent contends that the organization *221 in question is active in influencing legislation and, therefore, does not come within the class of organizations described in section 23 (o) of the Internal Revenue Code. The petitioners have offered no evidence to show that the organization in question is an organization the contributions to which are allowable deductions under the section mentioned and the record contains no showing of that point. Under the circumstances the deduction must be denied for lack of proof. Decision will be entered under Rule 50.